UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| **CHI T. VU AND VESMON-1, LLC** | § § § | **CIVIL ACTION NO:** |
| *Plaintiffs* | § § | |
| v. | § § | |
| **FOREST RIVER, INC.** | § § § | |
| *Defendant* | § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I. Parties

1.  Plaintiff, CHI T. VU, is an individual that is now and has been at all times a citizen of Tyler, state of Texas and Plaintiff, VESMON-1, LLC, is a limited liability company that is solely owned by Plaintiff, CHI T. VU, and is a citizen of the state of Texas with its principal place of business located in the state of Texas.

2.  Defendant, FOREST RIVER, INC., hereinafter "FOREST RIVER," is a citizen of Indiana and an Indiana corporation authorized to do and doing business in the state of Texas with its principal place of business located in the state of Indiana and is a warrantor of the recreational vehicle that Plaintiff purchased and is a merchant in goods of the kind involved in this case.

FOREST RIVER's agent for service of process is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, IN, 46204.

### II. Jurisdiction

3.  This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds

-1-

$75,000, excluding interest and costs. Plaintiffs are seeking a rescission of the sale under Texas DTPA §17.50(b)(3) and is seeking an order necessary to restore to him any money or property, real or personal, which may have been acquired in violation of the Texas DTPA. Plaintiffs are also seeking treble damages under Texas DTPA §17.50(b)(1), therefore, Plaintiffs' damages which will exceed $300,000.00, not including attorney fees and costs.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III.   Venue

4.   Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

Venue is also proper in this district under Tex. Bus. & Com. Code §17.56. VENUE. An action brought under this subchapter may be brought:

(1)   in any county in which venue is proper under Chapter 15, Civil Practice and Remedies Code; or

(2)   in a county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar.

Venue is also proper in this district under Tex. Bus. & Com. Code §15.033. Breach of Warranty By Manufacturer:

A suit for breach of warranty by a manufacturer of consumer goods may be brought in any county in which all or a substantial part of the events or omissions giving rise to the claim

occurred, in the county in which the manufacturer has its principal office in this state, or *in the county in which the Plaintiffs resided at the time the cause of action accrued*.

### IV. Conditions Precedent

5. All conditions precedents have been performed or have occurred.

### V. Facts

#### A. The Transaction

6. On April 21, 2022, Plaintiffs purchased a new 2022 FOREST RIVER COACHMEN SPORTSCOACH bearing VIN: 4UZACJFC2NCNU4021, hereinafter "COACHMEN," from MOTORHOME SPECIALISTS RV in Alvarado, Texas. The "COACHMEN" was purchased primarily for Plaintiffs' personal use.

7. The sales price of the COACHMEN was $204,623.98. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See **Hughes v. Segal Enterprises, Inc., 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); Chariton Vet Supply, Inc. v. Moberly Motors Co., 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

8. Plaintiffs are seeking a rescission of the sale under Texas DTPA §17.50(b)(3) and is seeking an order necessary to restore to him any money or property, real or personal, which may have been acquired in violation of the Texas DTPA.

9. Plaintiffs are seeking treble damages under Texas DTPA §17.50(b)(1), therefore, Plaintiffs's damages which will exceed $600,000.00, not including attorney fees and costs.

#### B. Implied Warranties

10. As a result of the sale of the COACHMEN by Defendant to Plaintiffs, an implied

-3-

warranty of merchantability arose in the transaction which included the guarantee that the COACHMEN would pass without objection in the trade under the contract description; and that the COACHMEN was fit for the ordinary purpose for which such motor vehicles are purchased.

11. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

12. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the COACHMEN, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the COACHMEN had, in fact, repaired the defects.

13. Plaintiffs' purchase of the COACHMEN was accompanied by express warranties offered by the Defendant, FOREST RIVER, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the COACHMEN.

14. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the FOREST RIVER's warranty booklet and owners manual.

### D. Actionable Conduct

15. In fact, when delivered, the COACHMEN was defective in materials and

workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to the following:

> **Less than 1 hour after purchase and delivery, I began having trouble with a multitude of items.**
>
> **Exterior:-**
> Paint over spray all over and defective bubbling-Windshield wiper sprayers not working-Dryer vent broken-Multiple Storage door seal sagging and falling off-LED light not working on the front Emblem
>
> **Interior:**
> -2 Drawers were broken-Multiple trim pieces were falling off
> -Outlet cover not attached-Small fittings were not attached and still in bags-Bathroom wood panel falling off-Shower leaking-Toilet would not flush properly-Flooring and walls were stained and chipped-Screens on windows were broken or defective-Front Door internal hardware was off track
> -AC in rear would not stay on Mechanical:-Sewer leak at the top seal
> -All fluids were not full. The previous issues were all noted after delivery. It was then driven approximately 300 miles by us before we drove it on it's maiden voyage. On it's maiden long voyage on 7th May 2022 Day 1.
>
> **New problems:**
> **External:**
> -The main large slide cover drivers side was parachuting in the wind and ripped. The cost to replace this during the trip was $350. This took 5 hours. Upon leaving the repair shop, the slide cover started becoming unraveling again. We then had to return to the shop to have the slide cover removed. This took another 1 hour. For the remainder of the 2 weeks we were unable to use the main slide in the rain.-On the same day we were also locked in the RV for about 1 ½ hours because the locking mechanism on the door shifted and would not open. So 4 people were trapped. After much help and many attempts, I had to completely remove the door mechanism and temporarily

-5-

>           repaired it.
>
> **Interior:**
>           Refrigerator door would not stay shut, it got dented.
>           More trim pieces came loose. A sliding bathroom door broke it holding bracket, I had to repair 3 hours
>
> **Mechanical:**
>           Fuses tripping throughout the travel the Generator did not work. For 2 days the Cameras stopped working or was intermittently working We had another trip planned in Mid June for 2 weeks. We could not repair first because the repairs were taking months. We traveled with all of the same problems the second trip. We returned through Alvarado, TX and took the vehicle back to the dealer for repairs on June 30th 2022. Currently, the RV is still under repair. The dealer has been unable to correct the problem and it remains in the repair shop, upon last communication. It has remained in repair for 6 months, to date. In approximately Mid August, we decided to sell the RV due to all the problems we are experiencing. The decision was to sell the RV during prime selling time in the summer since it was appraised very high. We attempted to put the RV in consignment at MHSRV, however due to all of the problems, it never came out of repair. Now the appraisal has gone down significantly since it is a 1 year older model version and it is no longer prime buying time in the winter. It still remains in the repair shop.
>
> **Mechanical: December 2022**
>           \*\*\*While in the repair shop without informing us the RV slide out motor broke, unknown reason. Copies of the repair orders which document the dealership's attempt to repair my vehicle can be located with the dealership. We have not received any invoice or work completed paperwork. I was able to use this RV, for the most part, for approximately 3 ½ weeks. These problems with my RV substantially impairs the use or value of my vehicle and/or creates a serious safety hazard

16.    Since purchase, Plaintiffs have returned his COACHMEN to the Defendant and its

authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendant were given the opportunity to repair the COACHMEN, the more significant and dangerous conditions were not repaired. Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the COACHMEN, continues to this day to exhibit some or all of the non-conformities described herein.

17. The defects experienced by Plaintiffs with the COACHMEN substantially impaired its use, value and safety.

18. Plaintiffs notified the Defendant of the defective conditions in the COACHMEN.

19. Plaintiffs are sending their Texas DTPA notice letter with this Complaint.

### VI.   Causes of Action

**COUNT 1:   VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

20. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

21. Plaintiffs are a "consumer" as defined in the DTPA.

22. Defendant violated the following provisions of the DTPA:

   a. §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

   b. §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiffs were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

   c. §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex. 1987);

      d.      §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

      e.      §17.50(3): an unconscionable action or course of action as defined by §17.45(5); and

      f.      §17.46(b)(12): misrepresenting agreements and legal rights.

23. Because of the inherent defects in the COACHMEN which defects existed at the time the COACHMEN was sold although not discovered until later, the COACHMEN was not merchantable in that it would not pass without objection in the trade under the contract description and it was not fit for the ordinary purpose for which such recreational vehicles are used. Furthermore, Defendant failed to perform the repair work in a good and workmanlike manner. This conduct by Defendant constitute a breach of the implied warranties described above, which breach is actionable under DTPA § 17.50(a)(2).

24. When the COACHMEN was not repaired, the express warranties that it would be and had been repaired were breached. Defendant's breach of the express warranties is actionable under DTPA § 17.50(a)(2).

25. The Defendant's statements that the COACHMEN's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendant's services. For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

26. The Defendant's acts or practices in the selling and/or repairing of the COACHMEN to Plaintiffs were unconscionable actions or courses of action because they took advantage of the Plaintiffs' lack of knowledge, ability, experience, or capacity of the Plaintiffs to a grossly unfair degree. For this reason, this transaction was unconscionable and is actionable under DTPA §

17.50(a)(3).

27. Plaintiffs further contend that the Defendant's violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiffs to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

28. This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

29. Any purported waiver or limitations of rights under DTPA by the Defendant is a violation of public policy under §17.42. WAIVERS: PUBLIC POLICY:

(a) Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; provided, however, that a waiver is valid and enforceable if:

(1) the waiver is in writing and is signed by the consumer;

(2) the consumer is not in a significantly disparate bargaining position; and

(3) the consumer is represented by legal counsel in seeking or acquiring the goods or services.

(b) A waiver under Subsection (a) is not effective if the consumer's legal counsel was directly or indirectly identified, suggested, or selected by a defendant or an agent of the defendant.

© A waiver under this section must be:

(1) conspicuous and in bold-faced type of at least 10 points in size;

(2) identified by the heading "Waiver of Consumer Rights," or words of similar meaning; and

(3) in substantially the following form

:

> "I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections. After consultation with an attorney of my own selection, I voluntarily consent to this waiver.

    (d)    The waiver required by Subsection © may be modified to waive only specified rights under this subchapter.

30. Any purported limitation or reduction in the statute of limitations by the Defendant under DTPA must not be less than two years under the Texas Civil Practice and Remedies Code §16.070. Contractual Limitations Period:

    (a)    Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

    (b)    This section does not apply to a stipulation, contract, or agreement relating to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an aggregate value of not less than $500,000.

31. Under DTPA the statute of limitations is two years §17.565.  LIMITATION:

**All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in this section may be extended for a period of 180 days if the Plaintiffs proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the Plaintiffs to refrain from or postpone the commencement of the action.**

32. The limited remedy in the Defendant's warranty fails of its essential purpose and deprives Plaintiffs of the substantial value of the bargain because Defendant or its authorized

dealerships did not correct the defects within a reasonable time. Tex. Bus. and Com. Code § 2.719. Therefore, any purported limitation of remedies is ineffective.

33.     The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

34.     The Plaintiffs seek the remedy of rescission of the sales contract under §17.50(b)(3) and seeks an order necessary to restore to Plaintiffs any money or property, real or personal, which may have been acquired in violation of the Texas DTPA.

35.     As a direct and proximate result of Defendant's willful violation of its obligations under the DTPA, Plaintiffs have suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the , damages associated with the inconvenience suffered as a result of the complete failure of the to operate properly, the loss of use of the during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, mental anguish and attorneys' fees. Plaintiffs have incurred and will continue to incur in order to protect their rights in this matter. The precise amount of damages is unknown at the present time but is estimated to be in excess of $300,000.00 and will be shown according to proof at trial. Attorneys' fees, loss of use, interest, and other damages continue to accrue.

36.     Under the DTPA, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendant' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continues to incur legal fees, costs and expenses in connection therewith.

## COUNT 2: BREACH OF EXPRESS WARRANTIES AND/OR CONTRACT

37. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

38. The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs's COACHMEN or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendant issued an expressed written warranty which covered the COACHMEN and warranted that the COACHMEN was free of defects in materials and work quality at the time of delivery.

39. As alleged above, the Defendant breached its warranties by offering for sale, and selling as safe to Plaintiffs a COACHMEN that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

40. In breach of the foregoing warranties, the Defendant has failed to correct said defects.

41. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 3: BREACH OF IMPLIED WARRANTIES

42. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

43. The Defendant impliedly warranted that Plaintiffs' COACHMEN which it designed, manufactured, and sold, were merchantable and fit and safe for his ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

44. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant is unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the COACHMEN had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiffs.

45. Because of the defects, Plaintiffs' COACHMEN is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendant breached the implied warranty of merchantability.

46. The damages Plaintiffs have suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### VII. Economic and Actual Damages

47. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

   a. Out-of-Pocket Rule. Recovery of the difference between the price paid and the actual value of the property acquired.

   b. Benefit of the Bargain Rule. The difference between the value of the goods and services would have had if they had been as promised and their value as delivered.

   c. Costs of Repairs.

   d. Loss Profits.

   e. Loss of Use.

      f.      Diminished or reduced market value.

      g.      Damages for Mental Anguish.

## VIII. Request for Rescission of the Sale under Texas DTPA §17.50(b)(3)

48. Plaintiffs are seeking a rescission of the sale under Texas DTPA §17.50(b)(3) and is seeking an order necessary to restore to him any money or property, real or personal, which may have been acquired in violation of the Texas DTPA.

49. Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to him the money obtained by Defendant as a result of their breach of Texas DTPA as set forth above. Plaintiffs also seek cancellation of the debt and now offers to return the COACHMEN to Defendant.

## IX. Multiple Damages

50. The Defendant's conduct in violation of the DTPA was committed knowingly, as that term is defined under Texas DTPA in that Defendant had actual awareness of the *falsity, deception, or unfairness of such acts, practices, and/or omissions*.

51. Plaintiffs further show that such acts, practices, and/or omissions were committed "intentionally" in that Defendant specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

52. Therefore, Plaintiffs are entitled to recover multiple damages as provided by §17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of her economic damages.

## X. Attorney Fees and Costs

53. Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit

-14-

including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI.   Prayer

54.   For these reasons, Plaintiffs pray for judgment against the Defendant for the following:

a.   For general, special and actual damages according to proof at trial;

b.   Rescinding the sale of the 2022 FOREST RIVER COACHMEN SPORTSCOACH bearing VIN 4UZACJFC2NCNU4021 under Texas DTPA §17.50(b)(3) and an order necessary to restore to Plaintiffs any money or property, real or personal, which may have been acquired in violation of the Texas DTPA and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c.   For incidental and consequential damages according to proof at trial;

d.   Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e.   Any diminution in value of the COACHMEN attributable to the defects;

f.   Past and future economic losses;

g.   Prejudgment and post-judgment interest;

h.   Damages for loss of use of vehicle;

i.   Civil Penalties and/or Punitive damages;

j.   Damages for mental anguish;

k.  Attorney fees;

l.  Costs of suit, expert fees and litigation expenses; and

m.  All other relief this Honorable Court deems appropriate.

### XII.  Demand for Jury Trial

55.  Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520
rick@rickdalton.law
(337) 371-0375

ATTORNEY FOR PLAINTIFFS